Charles LOCKERT, Plaintiff,

v.

Gordon H. FAULKNER, Cloid Shuler, Jack Duckworth, and Robert Bronnenberg, Defendants.

No. S 82–456.

United States District Court, N.D. Indiana, South Bend Division.

Nov. 10, 1983.

Charles Lockert, pro se.

Linley E. Pearson, Atty. Gen. of Indiana, Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case involves an affair of the heart, where two "star-crossed lovers" seek to marry against the wishes of their parens patriae, viz., the State of Indiana. While hardly rising to the level of pathos found in the myth of Pyramus and Thisbe, the situation does present this court with the interesting question of how far the State can go to maintain security in the controlled environment of a prison.

This action was filed pursuant to 42 U.S.C. § 1983 [1] by an inmate at the Indiana State Prison in Michigan City, Indiana, against various Indiana Department of Correction officials because of the defendants' refusal to permit the plaintiff to marry Ms. Patricia Samplowski, a non-inmate formerly employed at the Indiana State Prison. Plaintiff alleges that the defendants have denied him permission to marry Ms. Samplowski because of racial animus: the plaintiff is black, while Ms. Samplowski is white.

The defendants vigorously deny plaintiff's charge of prejudice, arguing that valid security reasons exist for proscribing the marriage. Specifically, defendants assert, and plaintiff does not deny, that Ms. Samplowski was discharged as a Prison employee for illegally trafficking in contraband with an inmate who just happened to be the plaintiff, Charles Lockert.

A hearing was held in open court in this matter on May 27, 1983, at the Indiana State Prison. At that time the defendants were given to and including September 1, 1983, in which to file any motions for summary judgment, with the plaintiff to be given to and including November 1, 1983, in which to respond. In addition to the above, this court, on June 8, 1983, ordered the plaintiff to file an affidavit of Ms. Samplowski indicating her continued desire to marry the plaintiff.[2] Defendants' motion for summary judgment, the response thereto, and a letter from Ms. Samplowski all having been filed, the motion for summary judgment is now ripe for ruling.

### I.

Before proceeding to an examination of the merits of plaintiff's claim, this court must first address itself to plaintiff's request for appointed counsel.

Plaintiff filed his Motion for Leave to Proceed In Forma Pauperis and for Appointment of counsel on December 14, 1982. On February 15, 1983, this court ordered plaintiff to provide the court with information concerning efforts to obtain counsel on his own. To date, plaintiff has made no attempt to comply with said order.

It is axiomatic that there is no constitutional right to appointed counsel in a civil case. *Thomas v. Pate*, 493 F.2d 151 (7th Cir.), *cert. denied*, 419 U.S. 879, 95

---

1. In addition to monetary damages under 42 U.S.C. § 1983, plaintiff also seeks declaratory and injunctive relief in accord with 28 U.S.C. §§ 2201, 2202.

2. This for the obvious reason that a lack of desire on her part to marry the plaintiff would, of necessity, render the case at hand moot.

S.Ct. 143, 42 L.Ed.2d 119 (1974). Rather, the decision whether to appoint counsel in a case rests within the sound discretion of the court. *McBride v. Soos*, 594 F.2d 610 (7th Cir.1979). When considering motions for appointed counsel, this court is guided by the standards set forth in *Maclin v. Freake*, 650 F.2d 885 (7th Cir.1981). These standards include, but are not necessarily limited to, such considerations as the legal and factual merits of the claim presented, the degree of complexity of the issues involved, and the movant's apparent physical and intellectual abilities to prosecute the action. See also, *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.1983); *McKeever v. Israel*, 689 F.2d 1315 (7th Cir.1982). This court is also mindful of a point not often made in these matters, and that is that the operative word in 28 U.S.C. § 1915(d) is "request", not "appoint", i.e., "[t]he Court may request an attorney to represent any such person unable to employ counsel." See David Ashley Bagwell, "Procedural Aspects of Prisoner § 1983 and § 2254 Cases in the Fifth and Eleventh Circuits," 95 F.R.D. 435, 443 (1982).

▪ Construing the facts of this case in light of the above, it is clear that the appointment of counsel herein would be unwarranted. The underlying facts of this case are not in dispute, and the legal implications flowing therefrom are, colloquially speaking, cut and dried. There is nothing in the record to indicate the existence of any physical or mental impairment on the part of the plaintiff which would effectively hamper or preclude the prosecution of his claim, and this court observed none at the May 27, 1983 hearing. Finally, this court notes with approval the generally good quality of plaintiff's pleadings, and the obvious care with which he has framed and argued the legal questions raised. Accordingly, and acting within the sound exercise of discretion, plaintiff's request for appointed counsel is hereby DENIED. See, *e.g.*, *Wilson v. Duckworth*, 716 F.2d 415 (7th Cir.1983); *Childs v. Duckworth*, 705 F.2d 915 (7th Cir.1983).

## II.

Defendants have framed the issues in this action essentially as follows: (1) whether the Indiana Department of Correction can deny plaintiff the opportunity to marry; and, (2) whether the decision to do so was based on constitutionally permissible grounds. Defendants contend that the answers to both questions are in the affirmative.

▪ The tension present here is clearly one between the right to marry, recognized as a fundamental civil right by the Supreme Court in *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967), and the State's need to maintain security at its penal institutions, a need that necessarily includes control over the ingress and egress of persons at said facilities. As the line of cases from *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) to the present has shown, courts must assiduously refrain from interfering in those administrative areas best left to correction officials.

Defendants argue that marriage boils down to four things: cohabitation, sexual intercourse, the begetting and raising of children, and a formal ceremony. Because, defendants argue, the plaintiff and Ms. Samplowski can only partake of the fourth item, it therefore follows that the only aspect of marriage being denied the plaintiff is a formal ceremony, a ceremony that "has none of the elements of marital privacy which bring the marriage relationship under constitutional protection[,]" citing *Johnson v. Rockefeller*, 365 F.Supp. 377 (S.D.N.Y.1973), *aff'd without opin. sub nom. Butler v. Wilson*, 415 U.S. 953, 94 S.Ct. 1479, 39 L.Ed.2d 569 (1974).

This definition of marriage is, to say the least, curious. To argue that what purports to be a marriage is not in fact a marriage if, after the ceremony, a couple cannot cohabitate, copulate and procreate, is patently absurd. Such a description of the connubial state effectively eliminates from the ranks of the married those who cannot or will not, for whatever reason, engage in marital relations and/or beget

children, while elevating to marital status those who choose to cohabitate, copulate and procreate without benefit of clergy, so long as they participate jointly in some form of ceremony, albeit nothing more than the opening of a joint bank account.

 The four items listed by defendants are indeed aspects of what society recognizes as a "standard" marriage. However, these four parts do not make the whole. Marriage is infinitely more than the sharing of a single roof and bed; it is a basic right, not to be infringed on lightly.

 This fact is implicitly conceded by the defendants. One of the exhibits appended to their motion for summary judgment is entitled "Inmate Marriage Policy." At page 1, paragraph A of said policy appears the following language: "The institution head [i.e., the Prison Superintendent] must grant the inmate's request [for permission to marry] unless it can be demonstrated that the state has a compelling interest in preventing the marriage." Since "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," F.R.Civ.P. 10(c), and a party is ordinarily bound by his pleadings,[3] let us turn to an examination of whether the defendants have demonstrated a compelling state interest in denying plaintiff's request for permission to marry.

As plaintiff correctly points out, "[f]or this denial to be constitutionally proper, the defendants must show that its [sic] interest cannot be satisfied by alternative methods less restrictive of the individual right abridged."

There is nothing in the record to indicate that a less obtrusive means of controlling the possibility of future trafficking between the plaintiff and Ms. Samplowski is unavailable to the defendants. Limitations on contact visits, careful searches of visitors, and the like would seem to be far less objectionable than a blanket denial of plaintiff's marriage request. Thus, a very

real question of fact exists as to the availability and practicality of alternatives to the denial of plaintiff's marriage request as a means of maintaining security and control at the Prison.

Accordingly, and based on the existence of a genuine issue of material fact, F.R. Civ.P. 56(c), defendants' motion for summary judgment must be, and hereby is, DENIED. SO ORDERED.

---

3. Note, however, that a memorandum in support of a motion is not a "pleading" for purposes of a binding judicial admission. See Wright & Miller, Federal Practice & Procedure § 1183 at 1, n. 23.1 (1982 pocket part).