**Randy Karl GOMETZ, Plaintiff-Appellant,**

v.

**Gary L. HENMAN, Warden, United States Penitentiary, Marion, Illinois, Defendant-Appellee.**

No. 85–3123.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 20, 1986.

Decided Dec. 8, 1986.

Rehearing and Rehearing En Banc Denied Jan. 15, 1987.

Randy K. Gometz, Marion, Ill., for plaintiff-appellant.

Richard Lloyd, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., U.S. Atty's. Office, East St. Louis, Ill., for defendant-appellee.

Before POSNER and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Thomas Silverstein, one of the leaders of the Aryan Brotherhood, a violent prison gang, is confined in a specially designed cell at the United States Penitentiary in Atlanta. Silverstein has been convicted of at least four murders and is serving multiple consecutive life sentences. Most of the victims have been other prisoners or guards who crossed or "disrespected" Silverstein or fellow members of the Aryan Brotherhood. See *United States v. Fountain*, 768 F.2d 790, *supplemental opinion*, 777 F.2d 345 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986); *United States v. Silverstein*, 737 F.2d 864 (10th Cir.1984); *United States v. Silverstein*, 732 F.2d 1338 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). When not doing the dirty work himself, Silverstein has arranged for executions. E.g., *United States v. Mills*, 704 F.2d 1553, 1555 (11th Cir. 1983), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984).

Silverstein landed in a custom cell because the Control Unit at Marion, the most secure part of the most secure prison in the country, was not secure enough to restrain him. While handcuffed and being escorted (by three guards!) from a shower to his cell, Silverstein reached into the cell of Randy Gometz, another inmate of the Control Unit. Gometz released Silverstein from the shackles and gave him a knife, which Silverstein used to kill one of the guards. *Fountain*, 768 F.2d at 793. Silverstein and Gometz were convicted of the murder after a joint trial.

While their appeal was pending Gometz, who remained in the Control Unit, tried to write to Silverstein in Atlanta. Convinced that Gometz and Silverstein had already coordinated their actions quite enough, the Warden of Marion refused to allow Gometz to send the letters, even after inspection and censorship. The Warden relied on 28 C.F.R. § 540.17(b), which conditions correspondence between federal prisoners on the approval of the wardens of both prisons. Gometz, who from the quality of his brief in this court is an adroit jailhouse lawyer, maintains that the refusal to allow the correspondence will deprive Silverstein of his access to the courts. He seeks an injunction that would compel the Warden to permit him to send mail to Silverstein concerning potential collateral attack on their convictions and potential challenges to the conditions of their confinement.

The magistrate recommended that the district judge dismiss the suit on the ground that because both Gometz and Silverstein were represented by counsel in the murder case, further assistance by Gometz is unnecessary to ensure Silverstein's access to the courts. Gometz did not file objections to the magistrate's report, which the district judge adopted. If the magistrate's report had been filed after August 4, 1986, when we decided *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538 (7th Cir. 1986), the failure to object would have foreclosed appeal. *Video Views* makes objections a normal precondition to appeal, although not a jurisdictional bar. *Video Views* applied the rule of preclusion to a

case in which the magistrate explicitly informed the parties that failure to object could result in forfeiture of the right to be heard on appeal. The court intimated that retrospective application would depend on the existence of such a warning. Any more extensive retroactivity would be inconsistent with *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The record in this case does not show that the magistrate so warned Gometz. The district's standard-form notice does not state that failure to object will waive objections on appeal, and nothing suggests that Gometz received warnings in addition to the stock notice. We therefore consider the appeal on the merits.

It is a fair question whether Gometz is entitled to assert Silverstein's right of access to the courts. Silverstein is capable of asserting his own rights, if assistance from Gometz is indeed essential, but Silverstein has not done so. Ordinarily a litigant may present only his own rights as bases of relief; *jus tertii* litigation depends on some hindrance to first party litigation, see *Singleton v. Wulff,* 428 U.S. 106, 116, 96 S.Ct. 2868, 2875, 49 L.Ed.2d 826 (1976), and no hindrance is in sight here. Yet some cases appear to allow assertion of third parties' rights when the parties stand in a vendor-vendee relation, whether or not there is any obstacle to the absent party's assertion of his own rights. E.g., *Craig v. Boren,* 429 U.S. 190, 192–94, 97 S.Ct. 451, 454–55, 50 L.Ed.2d 397 (1976) (seller of liquor may raise rights of potential drinkers). But see, e.g., *Diamond v. Charles,* — U.S. —, 106 S.Ct. 1697, 1705, 90 L.Ed.2d 48 (1986) (physician may not invoke rights of potential patients because the financial effect on his practice is too attenuated). So although physicians cannot always assert the rights of putative patients (*Singleton* and other abortion cases), barkeeps can assert the rights of putative barflies (*Craig*). The lack of harmony in the cases has been noticed, e.g., *FAIC Securities, Inc. v. United States,* 768 F.2d 352, 356–61 (D.C.Cir. 1985) (Scalia, J.); Henry Monaghan, *Third Party Standing,* 84 Colum.L.Rev. 277 (1984).

Where do jailhouse lawyer and jailbird stand? *Buise v. Hudkins,* 584 F.2d 223, 227 (7th Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979), reads *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), as allowing the jailhouse lawyer to assert the rights of the prisoners he desires to assist. But *Johnson* is silent on the question, and the plaintiff was protesting his discipline for furnishing legal advice, not seeking an injunction to compel prison officials to facilitate the rendition of advice. The jailhouse lawyer may not (lawfully) charge for his services, so the pecuniary interest that was thought important in *Craig* is missing here, as it was missing in *Diamond.* The parties have not asked us to revisit *Buise,* and a few sentences in Gometz's brief hint that he may be claiming that lack of communication with Silverstein may hamper his own efforts to obtain collateral relief. So we shall proceed to the merits, but not without some unease about the status of *Buise* given the latest twists in the law of third-party claims. See *Adams v. James,* 784 F.2d 1077, 1080–82 (11th Cir.1986) (finding no standing in a case of this character and explicitly disagreeing with *Buise*).

The merits of this case are simpler than the jurisdictional problems. Prison officials are legitimately worried about what Gometz may have to say to Silverstein. They are accomplished plotters; two convictions and a gravestone stand testimony. See also *United States v. Gometz,* 730 F.2d 475, 477 (7th Cir.) (en banc) (a conviction for assaulting a guard at Marion; one also assumes that Gometz was not assigned to the Control Unit by accident), *cert. denied,* 469 U.S. 845, 105 S.Ct. 155, 83 L.Ed.2d 92 (1984). Censorship of messages may not catch further plots. Prisoners can use code. Perhaps Silverstein will read every character corresponding to a prime number for the message identifying the next victim, or perhaps the phrase "I had Wheaties for breakfast" will signal an attempted escape. Neither the right of access to the courts nor the first amendment prevents prison officials from cutting communica-

tions between members of a violent gang. Cases such as *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), show that for good reason prison officials may restrict the speech and reading of prisoners. See *Bell v. Wolfish,* 441 U.S. 520, 550–51, 99 S.Ct. 1861, 1880–81, 60 L.Ed.2d 447 (1979) (prison may ban shipments of books from anyone other than the publisher, because books may be used to hold contraband); *Vester v. Rogers,* 795 F.2d 1179, 1182–83 (4th Cir.1986). Imprisonment curtails many rights, speech among them. There is reason aplenty to restrict speech between Gometz and Silverstein. Even if—which we gravely doubt—the standard of review is "strict scrutiny", as the Eighth Circuit held in *Safley v. Turner,* 777 F.2d 1307, 1311–13 (1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 2244, 90 L.Ed.2d 691 (1986), the Warden still had more than enough reason.

Perhaps recognizing this, Gometz founds his arguments on the due process right of access to the courts rather than the first amendment. Both *Johnson v. Avery* and *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), establish that there are many ways to the courthouse. For example, although a library may be essential for a prisoner without a lawyer, legal representation is always sufficient. A prisoner with a lawyer on call may not also insist on assistance from fellow prisoners, for the entitlement is to adequate access, not to maximum possible access. See also *Kunzelman v. Thompson,* 799 F.2d 1172, 1178–79 (7th Cir.1986); *Caldwell v. Miller,* 790 F.2d 589, 606 (7th Cir.1986); *Campbell v. Miller,* 787 F.2d 217, 226 (7th Cir.1986); *Buise,* 584 F.2d at 228. An indigent prisoner in the dock of a criminal trial does not have the right to the lawyer of his choice; he is entitled only to adequate assistance. *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). This implies that even if Silverstein—who has long had the assistance of lawyers—is entitled to the assistance of inmate writ-writers once his lawyers depart the scene, Silverstein is not entitled to the assistance of a *particular* lay assistant. There are un-doubtedly many jailhouse lawyers in Atlanta, and that prison has a substantial law library. These inmates may be skittish about making Silverstein's acquaintance, but his reputation will ensure that anyone who encounters him will give him fast and "respectful" service. Gometz does not offer us any reason to believe that he is the only prisoner in the federal system who can satisfy Silverstein's legal needs; we cannot imagine why Gometz would be.

The right of access to the courts, like all procedural rights under the due process clause of the fifth amendment, is an entitlement to enough process to ensure a reasonable likelihood of an accurate result, not to process for its own sake. See *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). The prison system is free to eliminate one kind of protection—be it inmate writ-writers or prison libraries—if it supplies adequate substitutes, such as lawyers. *Bounds,* 430 U.S. at 830–32, 97 S.Ct. at 1499–1500. Nothing in the record of this case suggests that the total of opportunities available to Silverstein falls below the constitutional minimum. Gometz does not claim that he possesses information essential to any case Silverstein may file. If he has such information, and if the Warden should forbid direct communication even after the filing of a collateral attack on the convictions, it might be necessary to appoint a lawyer who could serve as an intermediary, sending on the message in rewritten form to avoid coded instructions. But we need not speculate aimlessly; no such suit is pending. The only pending suit has just come to an end.

AFFIRMED.