Charles E. LOCKERT,
Plaintiff–Appellant,

v.

Gordon H. FAULKNER, et al.,
Defendants–Appellees.

No. 86–2547.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1987.

Decided April 1, 1988.
Rehearing and Rehearing En Banc
Denied May 26, 1988.

James J. Carroll, Kate Poverman, Sidley & Austin, Chicago, Ill., for plaintiff–appellant.

Mark A. Dabrowski, Indiana Atty. General's Office, Indianapolis, Ind., for defendants–appellees.

Before FLAUM, EASTERBROOK and MANION, Circuit Judges.

MANION, Circuit Judge.

Charles Lockert sued various Indiana Department of Corrections officials alleging that they unconstitutionally denied his requests to marry. The district court found for the defendants and Lockert appeals. Because Lockert has waived the only argument he raises on appeal for reversing the district court, we affirm.

Lockert, convicted in Indiana of felony murder, has been serving a life sentence at the Indiana State Prison in Michigan City since February, 1975. While working at the prison infirmary in 1979, Lockert met Patricia Samplawski, a nurse at the infirmary. Lockert and Samplawski became friends and began to correspond by mail; their friendship soon blossomed into a romance.

In July, 1979, prison authorities accused Lockert and Samplawski of "trafficking." "Trafficking" is a crime in Indiana that involves delivering an article to a prisoner or carrying an article from a prisoner outside the prison without the prison administration's permission. *See* Ind. Code Ann. § 35–44–3–9 (West 1986). While the term "trafficking" conjures up images of drugs and weapons, the articles Lockert and Samplawski passed were more mundane: Samplawski passed letters and eight-track tapes to Lockert, and Lockert passed a legal brief and an eight-track tape to Samplawski. Although the State filed no criminal charges against Lockert or Samplawski, prison authorities fired Samplawski and placed Lockert in disciplinary segregation for six months because of the "trafficking" incidents.

After Lockert was released from disciplinary segregation, he and Samplawski resumed writing to each other. Lockert and Samplawski also requested that Samplawski be allowed to visit Lockert. Initially, prison authorities denied that request. However, in October, 1980, prison authorities granted Samplawski and her three sons permission to visit Lockert.

Over the next nine months, Samplawski visited Lockert every two weeks. Lockert's and Samplawski's thoughts eventually turned to marriage and after discussing the ramifications, they decided to marry despite Lockert's life sentence. In May, 1981, they submitted a formal marriage request. Robert Bronnenberg, the prison's assistant superintendent, approved the request. However, Jack Duckworth, the prison superintendent, rescinded the permission and also removed Samplawski and her sons from the list of Lockert's approved visitors. Despite the fact that Samplawski had been visiting Lockert without incident for nine months, Duckworth concluded that allowing Samplawski to visit and marry Lockert would jeopardize prison security; it had been Duckworth's experience that those who had trafficked before were likely to traffic again. After discussing the matter with Duckworth, Cloid Shuler, the Department of Corrections' deputy commissioner, concurred in Duckworth's decision to deny the marriage request and any further visitation between Samplawski and Lockert.

Lockert and Samplawski persisted in their efforts to marry. Those efforts eventually paid off; Lockert and Samplawski were married in August, 1985, with Duckworth's blessing. In the meantime, as part of his efforts to secure Duckworth's blessing, Lockert had sued Shuler, Duckworth, Bronnenberg, and Gordon Faulkner,[1] the commissioner of the Indiana Department of Corrections, in September, 1982.[2] Lockert filed his original complaint pro se.

In September, 1983, the defendants filed a motion for summary judgment. In that motion, defendants asserted that they had

---

**1.** The district court subsequently dismissed Faulkner upon Lockert's request.

**2.** Besides damages, Lockert's complaint requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. Lockert's marriage made these requests moot.

denied Lockert's request on a constitutionally permissible ground: their concern for prison security. The district court denied the defendants' summary judgment motion. *Lockert v. Faulkner*, 574 F.Supp. 606 (N.D.Ind.1983). The court held that the defendants could legally prevent Lockert's marriage only if they had no less restrictive alternatives available to address their security concerns. The court further held that whether a less restrictive alternative existed presented a material question of fact. *Id.* at 609. Nothing in the court's opinion indicates that in denying their summary judgment motion the court had found the defendants liable.

After the district court denied the defendants' summary judgment motion, Lockert obtained counsel. Lockert then filed an amended complaint that clarified the relief he sought. In their answer to the amended complaint, the defendants raised a qualified immunity defense for the first time.

The district court referred Lockert's case to a magistrate pursuant to 28 U.S.C. § 636(b)(1)(B). After a bench trial, the magistrate, in a thorough and well-reasoned memorandum opinion, recommended that the district court enter judgment for the defendants. The magistrate reasoned that a prisoner's constitutional right to marry was not clearly established when the defendants denied Lockert's requests to marry Samplawski.[3] Therefore, the defendants were immune from damages under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[4]

Lockert filed objections in the district court to the magistrate's report. After reviewing the magistrate's report and Lockert's objections, the district court adopted the magistrate's analysis and entered judgment for the defendants. Lockert, now represented by different counsel, appeals.

Lockert bases his appellate argument on the Indiana Department of Corrections' "Inmate Marriage Policy." Paragraph A of that policy provides, in part, that "[t]he institution head must grant the inmate's request [to marry] unless it can be demonstrated that the state has a compelling interest in preventing the marriage." Lockert argues that because of its "must, unless" language, the "Inmate Marriage Policy" created an enforceable liberty interest. According to Lockert, the defendants did not have a compelling interest in preventing his marriage to Samplawski; thus, the defendants violated the "Inmate Marriage Policy." Therefore, Lockert's argument goes, because the defendants violated a regulation that created an enforceable liberty interest, qualified good-faith immunity does not shield them from liability for damages.

Lockert's appellate argument is imaginative. However, we do not reach the merits. 28 U.S.C. § 636(b)(1)(C) states that a party may file objections to a magistrate's report within ten days after being served with a copy of the report. A party who fails to object in the district court waives his right to appeal the district court's order. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir.1986). Lockert filed objections in the district court but those objections did not even hint at the "liberty interest" argument he raises on appeal. Moreover, as his appellate counsel candidly conceded, Lockert did not raise the argument in any other way in the district court. Therefore, Lockert has waived his "liberty interest" argument.

*Video Views* differs slightly from this case because the appellant in *Video Views*, unlike Lockert, filed no objections at all to

---

3. Lockert's original complaint and the amended complaint alleged claims based on Lockert's First Amendment right of association, procedural due process, and racial animus (based on the fact that Lockert is black and Samplawski is white). At trial, the magistrate characterized Lockert's claim solely as a substantive due process claim. On appeal, Lockert *does not* challenge the magistrate's characterization, and raises only a substantive due process argument.

4. In *Turner v. Safley*, —— U.S. ——, 107 S.Ct. 2254, 2265–67, 96 L.Ed.2d 64 (1987), the Supreme Court held that prisoners have a constitutional right to marry. However, *Turner* does not affect the magistrate's conclusion that a prisoner's right to marry was not clearly established when the defendants denied Lockert's marriage request.

the magistrate's report. But this difference is irrelevant. The waiver rule we announced in *Video Views* simply applies " 'the same rationale that prevents a party from raising an issue before a circuit court of appeals that was not raised before the district court....' " *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985) (upholding the Sixth Circuit's rule that failure to object in the district court to a magistrate's report waives appellate review) (quoting *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir.1984)); *see also Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980). The reasons that supported waiver in *Video Views* and *Thomas* support waiver here. "[P]recluding appellate review of any issue not contained in objections" in the district court promotes efficient use of judicial resources. *Thomas,* 474 U.S. at 148, 106 S.Ct. at 471. Objections focus the district court on the issues the parties actually dispute. Absent a waiver rule, courts of appeals would have to review issues that the district courts did not review, unless the district courts reviewed every issue in every case—including issues that the losing party did not deem important enough to raise in his objections to the magistrate's report. *Id.* at 147–48, 106 S.Ct. at 471. Thus, as other circuits have implicitly recognized, the waiver rule that the Supreme Court approved in *Thomas* and that we adopted in *Video Views* bars an appellant from raising issues on appeal that he did not raise in his objections in the district court. *See Wilson v. McMacken,* 786 F.2d 216, 220 (6th Cir.1986); *Praylow v. Martin,* 761 F.2d 179, 180 n. 1 (4th Cir.1985).

■ We decided *Video Views* on August 4, 1986. The magistrate filed his report on July 30, 1986. In *Gometz v. Henman,* 807 F.2d 113, 114–15 (7th Cir., 1986), we refused to apply the *Video Views* waiver rule when a magistrate filed his report before we decided *Video Views* because the magistrate had not expressly informed the parties that failing to object would waive appeal. We were concerned that applying *Video Views* retroactively in *Gometz* "would be inconsistent with *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)." *Gometz,* 807 F.2d at 115. But the magistrate's report here specifically warned Lockert that if he did not object to the report in the district court within ten days he would waive his right to appeal the district court's order. The magistrate's warning cited *Thomas v. Arn.* Lockert received adequate warning that failing to raise an argument in his objections to the district court would preclude him from raising that argument on appeal, so the problem we found in applying *Video Views's* waiver rule in *Gometz* does not exist here.

Lockert did generally object that the defendants were not immune from damages. Lockert argues that since his "liberty interest" argument relates to the defendants' qualified immunity, his general objection preserved the "liberty interest" issue. Lockert also argues that procedural irregularities prevented him from raising the argument below. According to Lockert, a "miscarriage of justice" will result if we do not reach the merits of his "liberty interest" argument.

This case did follow a somewhat unusual path in the district court. When the district court set Lockert's case for trial before the magistrate, the court set it only for a trial on *damages;* apparently, the court believed that it had decided the question of liability in Lockert's favor when it denied the defendants' original motion for summary judgment (despite the fact that the opinion the court filed in denying the motion provides no support for that belief). And rather than following the normal and preferred route of asserting their qualified immunity defense in a summary judgment motion early in the lawsuit, *see Mitchell v. Forsyth,* 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985), the defendants waited until after Lockert filed his amended complaint to assert the defense. Despite the fact that the district court's order called only for a trial on damages, the magistrate allowed the parties to try liability and immunity, and he addressed those issues in his report.

If we were reviewing the magistrate's report, the unusual course of events below

might, as Lockert insists, excuse his failure to raise the "liberty interest" argument and make it unfair for us not to consider that argument.[5] But we are reviewing the district court's judgment, and the unusual events below do not excuse Lockert's failure to raise the "liberty interest" issue before the district court. This is especially so here because in his report the magistrate actually discussed (and rejected) the very "liberty interest" argument that Lockert makes on appeal, despite the fact that neither party raised it.

Moreover, neither the magistrate's discussing the "liberty interest" argument, nor the district court's adopting the magistrate's report make it appropriate for us to review Lockert's argument. *Cf. Thomas*, 474 U.S. at 154, 106 S.Ct. at 474 (Supreme Court upheld waiver based on failure to file objections despite the fact that the district court actually reviewed the magistrate's report de novo). And Lockert's general objection in the district court that the defendants were not immune from damages did not preserve the "liberty interest" argument for review. The point of making objections is to tell the district judge—who, under § 636(b)(1) must make the final decision and enter judgment—what issues the parties actually dispute. Just as a complaint stating only "I complain" states no claim, an objection stating only "I object" preserves no issue for review. If Lockert's trial counsel disagreed with how the magistrate analyzed the Inmate Marriage Policy's effect on the defendants' qualified immunity, he should have let the district court know that by objecting on that basis. A district judge should not have to guess what arguments an objecting party depends on when reviewing a magistrate's report. Since Lockert did not raise his "liberty interest" argument before the district court, he has waived it. As Lockert makes no other argument for reversal on appeal, we affirm the district court.

AFFIRMED.

---

**5.** Whether even this is so is questionable. Lockert insists that his trial counsel was "surprised" and unprepared to try any issue except damages. But the magistrate told the parties that besides damages, the issues of liability and qualified immunity remained to be tried. Lockert's trial counsel did not complain about this; in fact, he specifically declined to disagree with the magistrate's assessment of the issues and addressed liability in his opening statement and his questioning. Moreover, Lockert's counsel never requested a continuance because of his "surprise." Lockert's trial counsel did focus his trial brief solely on damages. But the magistrate allowed the parties to submit post-trial briefs. Lockert's counsel submitted a post-trial brief but that brief did not raise the "liberty interest" argument.