19 F.3d 1431
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Houston Lee WILSON, Defendant-Appellant.
 No. 92-5607.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 28, 1993.
Decided March 16, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Richard L. Voorhees, Chief District Judge. (CR-91-48-A)
 David Grant Belser, Whalen, Hays, Pitts, Hugenschmidt, Master, Devereux & Belser, P.A., Asheville, NC, for appellant.
 Mervyn Hamburg, U.S. Dept. of Justice, Washington, DC, for appellee.
 Thomas J. Ashcraft, U.S. Atty., U.S. Dept. of Justice, Washington, DC, for appellee.
 W.D.N.C.
 AFFIRMED IN PART AND REMANDED.
 Before WIDENER, WILKINSON, and WILLIAMS, Circuit Judges.
 OPINION
 WIDENER, Circuit Judge:
 
 
 1
 Houston Lee Wilson appeals his conviction following a guilty plea to one count of possession of an unregistered firearm, 26 U.S.C. Sec. 5861(d), and two counts of possession of a firearm by a convicted felon, which firearm had been transported in interstate commerce, 18 U.S.C. Sec. 922(g)(1). The case against Wilson was based on two sawed-off shotguns found during a consent search of his mobile home and the surrounding premises. Because the magistrate judge did not apply the correct standard in determining whether Wilson's wife's consent to search was voluntary,[1] we remand the search and seizure issue for further consideration consistent with this opinion.
 
 
 2
 * In late February, 1991, the Buncombe County Sheriff's Department received information that Wilson and his wife were harboring Gary Dean Wolfe, an armed, escaped convict. Upon verifying the tip, the officers obtained a search warrant to enter the home and seize Wolfe. Wilson was also wanted on outstanding warrants. In the early morning hours of March 3, 1991, a task force of approximately 18 officers, split into two teams, approached the Wilsons' property to apprehend Wolfe. Sergeant Sandy Wallin telephoned the residence and a man answered. She informed him that the two men were under arrest and asked that they come out with their hands up. Several minutes later Wilson came out followed by Wolfe and Mrs. Wilson. During this time the second team performed a protective sweep of the backyard and house. Shortly thereafter Mrs. Wilson gave verbal consent to search the premises and signed a written consent form. During the search the officers seized a sawed-off shotgun and counterfeit currency from the mobile home and another sawed-off shotgun from a truck parked behind the mobile home.
 
 
 3
 While the officers searched the premises, Wilson was transported to the Buncombe County Jail. Officers testified that before interviewing him the next day, they noticed that he was experiencing alcohol-related withdrawal symptoms. They secured medication for him and then gave him his Miranda warnings. Wilson signed the Miranda warnings and stated that he wanted to talk to his attorney. The officers placed the call for him. Wilson talked to his attorney on the telephone and then informed the officers that he was willing to talk to them. After the officers verified that he understood the questions, Wilson stated that the sawed-off shotgun in the bedroom belonged to Wolfe and admitted the one found in the truck was his own. He was also questioned about the Calabash West break-in which had occurred a few months prior; one of the interviewing officers testified that Wilson's responses were identical to those given in an earlier interview with police in December 1990.
 
 
 4
 Two indictments were brought against Wilson as a result of this incident.[2] In the first he was charged with one count of possession of an unregistered firearm (Count 1) and two counts of possession of a firearm by a convicted felon (Counts 2 and 3), which firearm had been transported in interstate commerce, in violation of 26 U.S.C. Sec. 5861(d) and 18 U.S.C. Sec. 922(g)(1). The second indictment charged him with conspiracy to make counterfeit notes, in violation of 18 U.S.C. Sec. 371.
 
 
 5
 Prior to trial on these charges, Wilson moved to suppress the physical evidence seized during the search and the oral statements he made while in custody. The issue was referred to a magistrate judge. At the hearing Wilson argued that his wife's consent was the product of police threats and coercion and that his post-arrest statements to police were obtained in violation of his Miranda rights because his withdrawal from alcohol rendered him unable to make a knowing and voluntary waiver. Testimony about the events leading up to Mrs. Wilson's consent to search was contradictory. Upon conclusion of the two-day evidentiary hearing on September 3, 1991, the magistrate recommended that the suppression motion be denied. He concluded that Mrs. Wilson's consent to search was voluntarily given under the circumstances. As to Wilson's oral statements the magistrate found that any statements he may have made to officers between March 3 and 15, 1991, were made pursuant to a knowing and voluntary waiver of his Miranda rights as defined by Colorado v. Connelly, 479 U.S. 157 (1986). Wilson filed written objections to the magistrate judge's recommendation within the ten-day period and was permitted to file further objections on September 27, 1991. On November 20, 1991, after de novo review, the district court adopted the recommendation denying Wilson's motion to suppress.[3] Shortly thereafter, Wilson entered a guilty plea pursuant to Rule 11(a)(2) conditioned upon dismissal of the conspiracy charge and reservation of his right to seek review of the ruling denying his motion to suppress. Wilson was sentenced on the firearms indictment and the conspiracy charge was dismissed. This appeal followed.
 
 II
 
 6
 Wilson appeals his conviction claiming that the district court erroneously denied his motion to suppress the physical evidence and oral statements. He contends that the district court erred in adopting the magistrate judge's determination that his wife voluntarily consented to the search of their premises and that the court was clearly erroneous in finding that Wilson made the alleged March 4, 1991, statements regarding ownership of the shotguns before he invoked his right to counsel.
 
 
 7
 Wilson argues that the magistrate judge's determination regarding Mrs. Wilson's consent to search is erroneous because in his analysis of voluntariness the magistrate judge employed the objective standard set out in Florida v. Bostick, --- U.S. ----, 59 U.S.L.W. 4708 (U.S.1991), for determining when a seizure occurs, rather than the appropriate subjective standard under Schneckloth v. Bustamonte, 412 U.S. 218, 230 (1973), and United States v. Wilson, 895 F.2d 168, 171 (4th Cir.1990). We agree.
 
 
 8
 The issue of voluntariness of a defendant's consent to search is a factual question which should be upheld unless clearly erroneous. United States v. Analla, 975 F.2d 119, 125 (4th Cir.1992), cert. denied, 61 U.S.L.W. 3714 (U.S.1993) (citations omitted). However, the legal standard applied in determining voluntariness is a question of law to be reviewed de novo. The government initially contends that we are precluded from review because Wilson failed to preserve the Fourth Amendment voluntariness issue. It argues that we should extend the waiver rule of Schronce, which the Supreme Court approved in Thomas v. Arn, 474 U.S. 140, 142 (1985), to cases where mere general objections are filed.
 
 
 9
 In Schronce we held a defendant waives his right to appellate review where he fails to file any written objections to a magistrate's recommendation. United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208 (1984). The government asserts that two circuits have extended this rule to cases where a party files mere general objections to the entirety of the magistrate's report. In Howard v. Secretary of HHS, 932 F.2d 505, 507-09 (6th Cir.1991), the Sixth Circuit held that in effect no objections were filed in a civil case where a party clearly used a stock form, referred to persons and documents not involved in the case, and made no mention of any facts of the current case. The court explained that if the district court is not directed to specific issues for review the initial reference to the magistrate is rendered useless. 932 F.2d at 509. In Lockert v. Faulkner, 843 F.2d 1015, 1019 (7th Cir.1988), another civil case, the Seventh Circuit stated that an objection stating only "I object" preserves no issue for review, especially where counsel did not "even hint" at the issue now raised on appeal in his objections. While the argument may be persuasive, that district courts should not have to guess what arguments an objecting party depends on, we express no opinion on the propriety of deeming purely general objections a total waiver of review, as such is not the case here. Wilson's objections clearly identified his case and the magistrate's report. He objected to specific factual findings, all five of the magistrate's conclusions of law as unsupported by the testimony, and also stated several specific objections to the conclusions of law. Although it is true that as to the Fourth Amendment consent issue complained of here, Wilson objected only that that section of the magistrate's recommendation was not supported by the actual testimony; the issue of his wife's voluntary consent had been raised consistently throughout the case. The government's argument that the point has been waived is without merit.
 
 
 10
 The standard for determining whether an individual's consent to search is voluntary is a subjective one aimed at determining whether that individual's consent was freely and voluntarily given and was not the product of police coercion. See Schneckloth, 412 U.S. at 225-26; Wilson, 895 F.2d at 171. The magistrate judge mistook this standard with that Bostick used in determining whether a police encounter constitutes a "seizure." Concluding that the teachings of Bostick are applicable in determining whether a consent to search was voluntary, the magistrate judge adopted the objective reasonable person standard stating,
 
 
 11
 [a] court must take into account all the circumstances surrounding the consenting party's encounter with law enforcement officers in this case and determine whether the conduct of the law enforcement officers was sufficient to communicate to a reasonable person that she was free to decline the officers' requests [ ].
 
 
 12
 The district court adopted this conclusion.
 
 
 13
 The government argues that a remand for consideration under the subjective standard is not necessary because the magistrate judge's factual findings support a determination of voluntariness under any standard. We do not express an opinion as to voluntariness under the subjective standard on the factual record before us. The magistrate judge's analysis under Bostick emphasized the effect the officer's conduct in obtaining consent would have had on an objective reasonable person. He explained that no weapons were brandished or drawn, Mrs. Wilson was told her rights in detail, consent was obtained in a familiar setting (her kitchen), the officers had left the home when asked one hour prior, a female officer was present, and that the threat that a search warrant would be sought if she did not consent was merely a forecast of events. While the magistrate judge was correct in evaluating the totality of the circumstances, this evaluation should have dwelt on Mrs. Wilson's subjective state of mind, not that of an objectively reasonable person. See Wilson, 895 F.2d at 171-72. The parties presented different versions of the events leading to Mrs. Wilson's signature on the consent form. From the point of view of Mrs. Wilson, a totality of the circumstances analysis could conceivably lead to a different line of questioning of witnesses, uncover new factual findings, and result in a different conclusion. In short, the proper voluntariness question is not whether the conduct of the officers was sufficient to communicate to a reasonable person that she was free to decline the request, but whether Mrs. Wilson subjectively felt free to decline or give her consent under the circumstances. Accordingly, we remand for further consideration of the voluntariness issue under the proper standard.
 
 III
 
 14
 Wilson also argues that the district court was clearly erroneous in its finding that Wilson made the statements admitting ownership of the shotgun on March 4, before he had invoked his right to counsel. He argues that if the statement was ever made, it was made at a later interview after he had invoked his right to counsel and thus it should have been suppressed under Edwards v. Arizona, 451 U.S. 477 (1981), and Arizona v. Roberson, 486 U.S. 675 (1988). After reviewing the record, we cannot say that the district court's resolution of this testimonial conflict and its determination that Wilson made the oral statement on March 4 was clearly erroneous.[4] Its denial of the motion to quash in this respect is affirmed.
 
 
 15
 The case must be remanded to the district court for further proceedings not inconsistent with this opinion, which will include the taking of additional evidence by either of the parties, if they be so advised.
 
 
 16
 AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Following de novo review, the district court adopted this portion of the magistrate's recommendation verbatim
 
 
 [2]
 A third indictment, A-CR-91-112, is mentioned in the plea agreement but is not contained in the record
 
 
 [3]
 The district court set forth additional testimonial summaries, two further factual determinations, and a separate legal analysis of Wilson's Fifth Amendment waiver argument. Finding the remaining conclusions of law consistent with current case law, the court adopted the magistrate judge's analysis of the consent to search issue
 
 
 [4]
 At the suppression hearing Wilson denied making a statement to Lieutenant Calloway regarding ownership of the shotguns. Lieutenant Calloway testified that on March 4, following verbal Miranda warnings, signing a waiver of rights document, and a conversation with an attorney, Wilson made such statements. Detective Leffler, who was not present at any later interviews, testified that Wilson mentioned the shotguns during the March 4 interview