21 F.3d 430
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Jerry MONTGOMERY, Plaintiff/Appellant,
v.
Barry NOTHSTEIN, et al., Defendants/Appellees.
 No. 91-3026.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 29, 1994.*
Decided March 30, 1994.
Rehearing Denied May 3, 1994.
 
 Appeal from the United States District Court, for the Northern District of Indiana, South Bend Division, No. 88 C 690 (RLM); Robert L. Miller, Jr., Judge.
 Before POSNER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 
 
 1
 N.D.Ind.
 
 
 2
 AFFIRMED.
 
 ORDER
 
 3
 Jerry Montgomery filed a complaint against prison officials at the Indiana State Prison pursuant to 42 U.S.C. Sec. 1983. He alleged that they deliberately withheld and destroyed incoming mail that he needed to pursue a lawsuit he had filed in state court. The district court referred the case to a magistrate judge, pursuant to 28 U.S.C. Sec. 636(b)(1)(B). After a hearing, the magistrate judge determined that the evidence was insufficient to support Montgomery's claim that the defendants had acted to deprive him of his constitutional rights. The district court adopted the report and recommendation of the magistrate judge. We have reviewed the record and AFFIRM for the reasons stated in the report and recommendation of the magistrate judge and the district court's order.
 
 
 4
 Montgomery raises two additional claims: the dismissal of his due process claim and the failure of the district court to enter a default judgment against defendant Jack Duckworth, who did not appear at the hearing. Montgomery could not bring his due process claim in federal court under Sec. 1983 because he had an adequate remedy in the Indiana Tort Claims Act. I.C. 34-4-16.5-1, et seq.; Hossman v. Spradlin, 812 F.2d 1019, 1023 (7th Cir.1987); see Hudson v. Palmer, 468 U.S. 517, 531 (1984). We also find that Duckworth, whose counsel attended the hearing, was not required to appear in the absence of a subpoena or an order from the court. See McGill v. Duckworth, 944 F.2d 344, 353 (7th Cir.1991), cert. denied, 112 S.Ct. 1265 (1992).
 
 
 5
 AFFIRMED.
 
 ATTACHMENT
 MEMORANDUM AND ORDER
 
 6
 MILLER, District Judge.
 
 
 7
 Pursuant to 28 U.S.C. Sec. 636(b)(1)(B), Magistrate Judge Robin D. Pierce conducted a trial in this case on June 3, 1991. At the conclusion of the trial, Magistrate Judge Pierce informed the parties that he would recommend entry of judgment for all defendants. On June 7, Mr. Montgomery filed objections to the announced recommendation. On June 12, Magistrate Judge Pierce filed his report and recommendation. On June 21, Mr. Montgomery filed new objections. The court treats both sets of objections as having been timely filed. See Firstier Mortgage Co. v. Investors Mortgage Ins. Co., 111 S.Ct. 648 (1991). Having reviewed the report and recommendations, both sets of objections, and the transcript of the proceedings, the court, reviewing the record de novo, finds itself in full agreement with the magistrate judge's recommendation.
 
 
 8
 Mr. Montgomery's various objections cannot, and need not, be addressed separately. Most of his objections go to the weighing of the evidence, a task this court is to conduct on its own. He questions the burden of proof to which he was held, the evidence on which the magistrate judge relied (variously describing the magistrate judge's reliance on Plaintiff's Exhibit A-4 as "abnormal" and insisting that the same exhibit proves his case), and the magistrate judge's estimation of the sufficiency of his proof. All of these objections may be resolved by the simple statement that this court has reviewed the transcript and agrees with the magistrate judge that Mr. Montgomery failed to prove that it is more likely than not that any of the remaining defendants were personally involved in the loss of the X-rays. Mr. Montgomery simply presented no affirmative proof, apart from Exhibit A-4, of what happened to his X-rays. Suggestions that the defendants were untruthful in their testimony cannot substitute for such proof; Mr. Montgomery had the burden of proving personal involvement. Mr. Montgomery claims that the court must view the evidence in the light most favorable to the plaintiff-prisoner; while this is true on a motion to dismiss the complaint or a defendant's summary judgment motion, it simply is incorrect at trial.
 
 
 9
 Accordingly, Mr. Montgomery's reliance on Zinermon v. Burch, 494 U.S. 113 (1990), and the Indiana constitution are misplaced. Neither Zinermon nor any cited provision of the Indiana constitution makes prison authorities liable for things that happened in the post office.
 
 
 10
 Mr. Montgomery raises some objections that do not relate to the weighing of evidence, but none of those have merit. The magistrate judge's ruling on Mr. Montgomery's request for depositions was correct. McNeil v. Lowney, 831 F.2d 1368 (7th Cir.1987). Mr. Montgomery complains that the magistrate judge refused to subpoena witnesses for him. Mr. Montgomery was not disallowed any witnesses; the magistrate judge allowed him to call all witnesses present at trial, notwithstanding Mr. Montgomery's failure to file a witness list. Not having informed the magistrate judge of his intended witnesses in accordance with the order that carefully explained the process for doing so, Mr. Montgomery cannot seriously complain that the magistrate judge did not cause the undisclosed witnesses to appear at trial.
 
 
 11
 Mr. Montgomery states that the magistrate judge "did not care whether or not the Plaintiff may or may not have been prejudiced in the State Court and Indiana Insurance Commission by the Loss of the X[-]ray and Medical Reports." The magistrate judge's comments at the trial's conclusion suggest that he cared and would have liked to have known what happened in the state court proceedings. The court agrees with the magistrate judge, however, that the outcome of the state proceedings is not relevant in the final analysis; even if Mr. Montgomery lost out on a substantial medical tort claim, he did not show that any of these defendants were responsible for that loss.
 
 
 12
 Mr. Montgomery objects to the exclusion of his Exhibit A-7, which he says was signed by the same person as Exhibit A-1. The magistrate judge admitted Exhibit A-1 into evidence over a hearsay objection pursuant to Fed.R.Evid. 804(b)(5), but believed that Exhibit A-7 did not bear the same indicia of reliability. The admission and exclusion of evidence is a matter of discretion, and the court agrees with the magistrate judge's exercise of discretion. Exhibit A-1 was notarized; Exhibit A-7 was not.
 
 
 13
 Finally, Mr. Montgomery objects to the report's characterization of his claims, claiming that the report ignored an allegation of his complaint. The court rejects this objection for two reasons. First, the pretrial order supersedes the pleadings, and the report accurately sets forth the plaintiff's contentions in the pretrial order. Second, Mr. Montgomery's proof at trial would not have supported the claim in the complaint: the proof did not support the allegation that the defendants acted in bad faith disregard of mail regulations.
 
 
 14
 Mr. Montgomery had a fair trial, at which he was unable to prove that any defendant committed any act that deprived him of any right. The court OVERRULES Mr. Montgomery's objections and ADOPTS the magistrate judge's report and recommendation of June 12, 1991.
 
 
 15
 SO ORDERED.
 
 ENTERED: August 16, 1991
 REPORT AND RECOMMENDATION
 
 16
 PIERCE, United States Magistrate Judge.
 
 
 17
 The plaintiff, Jerry Montgomery, is an inmate at the Indiana State Prison ("ISP") in Michigan City, Indiana. On November 28, 1988, Mr. Montgomery filed the present action, pro se, pursuant to 42 U.S.C. Sec. 1983, alleging that the defendants conspired to violate his constitutional rights by withholding from his incoming prison mail certain x-rays and medical reports relating to treatment he received for an eye injury prior to his incarceration. According to the complaint, Mr. Montgomery needed the x-rays and medical reports for use in connection with a suit he had filed against a hospital and a doctor in state court. Named as defendants in the present case were Barry Nothstine, a former ISP investigator, now superintendent of administrative services; Jack R. Duckworth, former ISP superintendent; William Hartley, ISP director of classification; unidentified ISP mail room personnel; and Steven Tyler, a private attorney who had represented the hospital in Mr. Montgomery's negligence action.
 
 
 18
 On June 16, 1989, Judge Miller dismissed Mr. Montgomery's action against defendant Tyler. Judge Miller also dismissed Mr. Montgomery's claims against the other defendants, except for his "claim against defendants Duckworth, Nothstine, and Hartley in their individual capacities for damages arising from denial of access to the courts." Mr. Montgomery's case was subsequently referred to this magistrate, pursuant to 28 U.S.C. Sec. 636(b)(1)(B), with instructions to conduct any necessary hearing and to submit a report and recommended disposition of the case. On June 3, 1991, a trial to the court was conducted at the ISP. Mr. Montgomery appeared pro se. At the conclusion of the evidence, the court announced that it would recommend that judgment be entered in favor of all the defendants and against Mr. Montgomery on his remaining claim. This Report and Recommendation constitutes the court's findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).
 
 
 19
 Mr. Montgomery's contentions as set forth in the pretrial order are as follows:
 
 
 20
 The Plaintiff contends that on or about September 20, 1988, Viola Leonard mailed 10 x-rays, 33 pages of medical records and some miscellaneous material to the Plaintiff at the Indiana State Prison in Michigan City, Indiana. Plaintiff contends that the aforesaid mailed x-rays and medical documents were received in their entirety at the Indiana State Prison on or about September 22, 1988 and that they were tactically [sic], purposely and negligently destroyed, withheld and sabotaged by the prison's officials and partially returned to the Superintendent of Postal Operations, Joseph P. Marando in Michigan City, Indiana, with only "AN XRAY" found loose here at the Prison on said date, 9-22-88. After the Superintendent of Postal Operations received the one x-ray (and no medical records), the Superintendent, Marando forwarded the one x-ray back to the Plaintiff at the Indiana State Prison, which was received on September 30, 1988, though, the Superintendent, Marando gave notice of the prison official's action via a letter dated September 22, 1988 explaining where, when and how the x-ray was returned from the Supervisor at the Prison's mail room, Mr. Hartley.
 
 Findings of Fact
 
 21
 Preliminarily, the court must note that the evidence concerning the nature of Mr. Montgomery's eye injury, along with the history and status of his state court litigation, is fragmentary and, in some respects, confusing. The details of Mr. Montgomery's injury and the course of his state court litigation, however, are not crucial to the court's determination of his remaining claim, and specific findings relative to those matters have thus been omitted. For purposes of general background, it will be assumed that at some point during the course of the state court litigation Mr. Montgomery had need for certain x-rays and medical records which he had left in Freeport, Illinois, in the custody of his aunt, Viola Leonard.
 
 
 22
 On or about September 20, 1988, Viola Leonard mailed an envelope containing x-rays and 33 pages of medical records to Mr. Montgomery at the ISP. According to Ms. Leonard's affidavit, she placed the x-rays and medical records in an envelope she had purchased and addressed at the Post Office, because she was advised that the "envelope from the hospital was not adequate for safe mailing." (Plaintiff's Ex. A-1).
 
 
 23
 Subsequently, in a letter to Mr. Montgomery dated September 22, 1988, Joseph P. Marando, Superintendent of Postal Operations in Michigan City, Indiana, stated as follows:
 
 
 24
 We are in receipt of the most recent PS Form 1510 you filled out about an item sent to Hospital Correspondence Copiers, Rosemont, Illinois. This is the fifth tracer to various addresses that we have received from you in the last two weeks--all are being processed. However, the tracing procedures are quite an undertaking and do require some time to complete. You will be notified of the results.
 
 
 25
 I am sorry I cannot do as you ask and make phone calls to this addressee to request delivery verification and to pass on personal information and orders to them. It is not the responsibility of the U.S. Postal Service to perform clerical staff functions for everyone who mails an article. We would like to be of service, but to do this would be totally impossible not to mention very costly.
 
 
 26
 The purpose of these PS Form 1510's is to try and locate lost mail. It is not meant to be used "just to see if the addressee received it." If you wish to know if the addressee receives a certain item, you should send this article certified mail with a return receipt requested. When the mail is delivered, it is signed for and you will get the return receipt back showing the date and signature of delivery.
 
 
 27
 I am sending under separate cover a copy of this letter and an X-Ray that was found loose to the Mail Room Supervisor at the Prison. Please contact that Supervisor to see if this is the X-Ray you are looking for. Nothing else was found. If this is not your X-Ray, I would appreciate the Supervisor returning to me so that I may forward it on.
 
 
 28
 Again, all tracers received are being acting [sic] upon and you will be notified of the results.
 
 
 29
 (Plaintiff's Ex. A-4) (emphasis supplied).
 
 
 30
 On the same day, September 22, 1988, an unidentified member of the ISP mail room's clerical staff came into the office of defendant, William J. Hartley, and presented him with a large manila envelope containing two x-rays. (Hartley was supervisor of classification at the ISP. Although his duties included supervision of the mail room, he did not personally review all incoming mail; if the mail room staff would have a question as to whether a given item of incoming mail should be allowed or withheld from the addressee, the staff would bring it to him for review.) On this occasion, Hartley authorized the forwarding of the x-rays to Mr. Montgomery. On the envelope which accompanied the x-rays, Hartley noted Mr. Montgomery's last name and his prisoner number and wrote: "9-22-88 O.K. W. Hartley." (Plaintiff's Ex. J). Hartley testified that to the best of his recollection this was the only instance in which x-rays came in for Mr. Montgomery, and the franked envelope marked as Plaintiff's Ex. J, which bears a return address for the United States Post Office in Michigan City, appears to correspond to the letter from Joseph P. Marando dated September 22, 1988 (Plaintiff's Ex. A-4).
 
 
 31
 On or about September 27, 1988, Mr. Montgomery contacted Barry L. Nothstine, an ISP investigator. Montgomery indicated at the time that he was interested in obtaining some medical records and x-rays for use in a case and told Nothstine that Hartley was withholding the materials. Nothstine subsequently called Hartley and was advised that x-rays had been received in the mail and that they were sent out to Mr. Montgomery and his counselor. Nothstine later told Montgomery that he had gotten everything that had been received by Hartley, and concluded his investigation of the matter with the following memo to Montgomery dated September 28, 1988:
 
 
 32
 I spoke with Mr. Hartley about any medical records or x-rays sent you by mail to be used as evidence. He advised he has received one (1) x-ray and he had a counselor bring that in to you.
 
 
 33
 Your discovery order is between you, the courts and the defense attorney(s). We will not enter into that matter at all except to deliver any evidence you may receive by mail.
 
 
 34
 Regarding the latter sent to me when I was acting investigator by Stephen Tyler. As you are aware I did not talk to you about it as I did not feel in [sic] was necessary.
 
 
 35
 (Defendant's Ex. 2).
 
 
 36
 On September 30, 1988, Mr. Hartley reviewed another piece of mail addressed to Mr. Montgomery. Although this item of mail appears to correspond to that which was sent by Viola Leonard, markings on the envelope indicate that it was received at the Main Post Office in Michigan City "in bad condition" (Plaintiff's Ex. K). Mr. Hartley determined that the envelope contained prohibited medication, but did not recall if the envelope also contained x-rays. On the front of the envelope, Mr. Hartley wrote: "9-30-88 medication is not allowed W. Hartley." He also completed a written form notifying Mr. Montgomery that the medication was being withheld (Plaintiff's Ex. A-9).
 
 Discussion and Conclusions
 
 37
 Although the evidence before the court indicates that x-rays and medical records were mailed to Mr. Montgomery at the ISP, and while the evidence also shows that Mr. Montgomery apparently received only a small portion of the materials which were sent to him, the evidence fails to demonstrate that any of the remaining defendants were personally involved in the loss, destruction or withholding of the materials. Individual liability under Sec. 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. Schultz v. Baumgart, 738 F.2d 231, 238 (7th Cir.1984). A defendant can be held liable under Sec. 1983 in his individual capacity only if he caused or participated in the constitutional deprivation; a "causal connection or an affirmative link" between the conduct and the defendant must exist. Wolf-Lillie v. Sonquist, 699 F.2d at 869 (7th Cir.1983). An official is personally involved if (a) he participates directly in the constitutional deprivation, (b) he acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or (c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his knowledge and consent. Rascon, 803 F.2d at 274 (7th Cir.1986); Smith v. Rowe, 761 F.2d 360, 269 (7th Cir.1985); Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir.1982).
 
 
 38
 In this case, there is no evidence that defendant Duckworth, the ISP superintendent at the time, was involved in any way in any of the events surrounding the receipt, review or handling of Mr. Montgomery's incoming mail; indeed, Superintendent Duckworth was never mentioned throughout the trial. There is also no evidence that Mr. Nothstine was ever involved in the receipt, review or handling of Mr. Montgomery's mail; there is no indication that he acted or failed to act with reckless disregard of Mr. Montgomery's constitutional rights; and there is nothing to suggest that the handling or disposition of Mr. Montgomery's mail by prison personnel occurred at Nothstine's direction or with his knowledge and consent. The uncontradicted evidence discloses nothing more than the fact that upon Montgomery's request Nothstine inquired as to whether any x-rays or medical records had been withheld from Montgomery's mail, that Nothstine determined that no such materials had been withheld, and that he so advised Montgomery. Although Mr. Montgomery has sought to advance the theory that Nothstine, Hartley and Stephen Tyler somehow conspired to impair or undermine Montgomery's state court suit by intercepting the x-rays and medical records, such a theory represents nothing more than pure speculation unsupported by any evidence. Finally, Mr. Montgomery's case against Hartley must fail in the face of evidence suggesting that the missing medical records and x-rays were either lost or destroyed before they ever reached the prison, and the uncontradicted evidence that the only item of Montgomery's incoming mail which Hartley ever withheld or disallowed was the medication received at the prison on September 30, 1988. Ultimately, there is no indication that Hartley participated directly or indirectly in any violation of Mr. Montgomery's constitutional rights; there is nothing to suggest that Hartley acted or failed to act with reckless disregard of Mr. Montgomery's constitutional rights; and there is no evidence that the x-rays and medical records were withheld at Hartley's direction or with his knowledge and consent. Indeed, the evidence contains nothing which would imply that Mr. Montgomery's constitutional rights were violated by anyone.
 
 
 39
 For the foregoing reasons, it is RECOMMENDED that the plaintiff take nothing by his complaint against defendants Duckworth, Hartley and Nothstine, and that judgment be entered in favor of the defendants on all of the plaintiff's claims.
 
 
 40
 ANY OBJECTIONS to this report and recommendation must be filed with the Clerk of courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Lockert v. Faulkner, 843 F.2d 1015 (7th Cir.1988); Video Views, Inc. v. Studio 21 Ltd., 797 F.2d 538 (7th Cir.1986).
 
 
 41
 Dated this 12th day of June, 1991.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs