489 F.2d 1014
 Roger KNELL, Plaintiff-Appellant,
v.
Peter B. BENSINGER, Director Department of Correction of
State of Illinois,and John J. Twomey, Warden,
Illinois State Penitentiary, Joliet,
Illinois, Defendants-Appellees.
 Nos. 72-1571, 72-1788.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 11, 1973.
Decided Nov. 6, 1973.
 
 Roger Knell, in pro. per., Edward B. Beis, Cook County Legal Assistance Foundation, Chicago, Ill., for plaintiff-appellant.
 Raymond McKoski, Asst. Atty. Gen., William J. Scott, Atty. Gen., Chicago, Ill., for defendants-appellees.
 Before KILEY, FAIRCHILD and STEVENS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The appellant, Roger Knell, an inmate of the Illinois State Penitentiary, Stateville Branch, filed two claims based on 42 U.S.C. 1983 in the District Court for the Northern District of Illinois. In the first, 72 C 138, the court granted the State's motion for summary judgment; in the second, 72 C 1104, it granted the State's motion to dismiss. Both cases arise out of the same factual situation.
 
 
 2
 Based on the pleadings and affidavits, the following facts appear to be uncontradicted. In late 1971, the appellant was accused of writing a letter to an unauthorized person, and of smuggling the letter out of the prison. On or about November 17, appellant was brought before a three-man Prison Disciplinary Committee. The allegation of the rule infraction was read to him and he was allowed to speack in his own defense. He asserted his innocence, and, presumably in order to establish his claim, requested that he be permitted the assistance of an adviser in the person of a 'jailhouse lawyer' and the opportunity to call a witness. Both requests were denied, and the Committee found he had violated the regulation. He was thereupon placed in punitive isolation for a period of 15 days, and his case was referred to the Merit Staff for further consideration. While in isolation, appellant was denied mailing privileges including the right, pursuant to a rule no longer in force, to file a writ of habeas corpus with the federal court. Furthermore, during isolation, he was denied the assistance of an adviser and the use of the prison's law library. After his confinement in isolation ended, appellant appeared before the Merit Staff Committee. As in the previous hearing, he was allowed to speak on his own behalf, but after asserting his innocence, was again denied either the assistance of an adviser or the opportunity to call a witness. The Merit Staff, in effect, reaffirmed the finding of his guilt and determined both to revoke three months' statutory good time which he had earned and to demote him in the status by which future good time is computed.[1] These suits followed.
 
 No 72 C 138
 
 3
 In the first of his actions, the appellant claims that his rights were violated both in that he was denied access to the courts, and in that he was not accorded adequate procedural protection at the hearings which led to the imposition of punishment.
 
 
 4
 Following the decision of the Disciplinary Committee to place him in punitive isolation, the appellant attempted to file a writ of habeas corpus in federal court. There is no dispute that, under the then-applicable prison regulations, he was denied the opportunity to do so. In this action he seeks both injunctive relief against rules inhibiting the access to the courts by prisoners in isolation, and damages for the violation of his civil rights which, he claims, such a denial constituted. The State argues that the request for injunctive relief is now moot since the regulations prohibiting prisoners in isolation from communicating with the courts have been modified; that damages do not lie in these circumstances; and, in any event, that the Constitution prohibits only unreasonable denial of access to the courts.
 
 
 5
 It is true that, since appellant's incarceration in isolation, prison regulations concerning the rights of inmates being so disciplined have been changed. The new regulations, issued on February 15, 1972, and implemented by April 3, 1972, as set forth in the State's Motion to Dismiss or For Summary Judgment, at page 8 of the Record, provide:
 
 
 6
 'Inmates in disciplinary isolation will:
 
 
 7
 Receive normal visiting privileges and legal mail privileges.
 
 
 8
 Visits may be in the presence of an officer. 'Inmates in isolation, segregation or any 'lock-up' status shall not be denied the opportunity to correspond with the Director of Corrections, the Assistant Director of the Adult Division, their attorneys, or with any State or Federal Court.'
 
 
 9
 Under this regulation, it is clear that a prisoner in isolation would be entitled to file a writ of habeas corpus. The injunctive relief sought by the appellant is to this extent unnecessary. But the prisoner complained of more. He objected to his inability to consult with an adviser for the purpose of receiving assistance in the preparation of his petition and to the denial of the opportunity to consult materials in the Prison's Law Library. We do not know whether the quoted portions of the new regulations have changed the prison rules in this regard;[2] if there have been other changes, the State has not brought them to our attention.
 
 
 10
 In Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 the Supreme Court had occasion to consider the problems prisoners face in articulating legal claims. A Tennessee prison regulation prohibited the petitioner from providing legal assistance to his fellow inmates. Reasoning from the premise that 'access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed,' 393 U.S., at 485, 89 S.Ct., at 749, the Court held that 'access' meant more than the mere right to file papers with the court. Meaningful access included the right to examine legal materials in order to establish what legally cognizable claims might exist or having the assistance of someone with comparative specialization. The Court reasoned:
 
 
 11
 'There can be no doubt that Tennessee could not constitutionally adopt and enforce a rule forbidding illiterate or poorly educated prisoners to file habeas corpus petitions. Here Tennessee has adopted a rule which, in the absence of any other source of assistance for such prisoners, effectively does just that. The District Court concluded that 'for all practical purposes, if such prisoners cannot have the assistance of a 'jail-house lawyer,' their possibly valid constitutional claims will never be heard in any court.' 252 F.Supp. (783) at 784.' 393 U.S. at 487, 89 S.Ct. at 749.
 
 
 12
 Accordingly, the Court sustained the district court's holding that the prison regulation was invalid.
 
 
 13
 Upon the record before us, even under the newly promulgated rules, it is possible that prisoners in isolation in Stateville may be denied effective access to the courts for the purpose of challenging the legality of their confinement. Cf., Gilmore v. Lynch, 319 F.Supp. 105, 110 (N.D.Cal.1970). If effective access is denied to inmates in isolation at Stateville, injunctive or declaratory relief may be required.
 
 
 14
 Defendants argue that the Constitution requires no more than reasonable access to the courts. We agree. Sigafus v. Brown, 416 F.2d 105, 107 (7th Cir. 1969). But even though the State may regulate the mechanics of prisoner communication with the courts to an extent consistent with 'reasonable access,' with appellant has alleged that he was denied any access whatever to challenge the legality of his confinement in isolation during its pendency. The complete frustration of a prisoner's attempt to consult an adviser or to use the prison law library may constitute an effective denial of access to the courts, quite apart from the denial the right to send mail to the court under the old regulation. Of course, a prisoner in isolation does not have an unlimited right to use the library or to consult with an adviser. But the complete failure of the regulation to make any provision for assistance to the illiterate and indigent prisoner in isolation may make the new regulation vulnerable.[3]
 
 
 15
 Defendants next argue that damages are not an available remedy for a prisoner who claims an unlawful confinement in punitive isolation. They assert that the prison officials were enforcing an apparently valid regulation in good faith. The defense raises a question of fact for the district court to resolve in the first instance.
 
 
 16
 We therefore conclude that the cause must be remanded to the district court to determine whether the regulations in force at Stateville do in fact permit effective challenge of punitive isolation by inmates other than those who have retained counsel or are sufficiently learned in the law to challenge their confinement effectively without advice and without the tools of legal research; and whether appellant can prove damages arising out of his denial of access to the courts during his 15 days in isolation.
 
 
 17
 The second claim appellant asserts in his first complaint is that he was subjected to punishment without adequate procedural protection. For having been found to have violated prison regulations by writing an unauthorized letter, appellant was subjected to 15 days in punitive isolation, the loss of three months' statutory good time which he had earned, and the demotion from Grade 'A' to Grade 'C' affecting his ability to earn future good time. We have no doubt that such punishment constitutes a 'grievous loss' which necessitates the procedural safeguards discussed in Miller v. Twomey, 479 F.2d 701 (7th Cir. 1973). This branch of 72 C 138 must therefore be remanded for further consideration in light of Miller v. Twomey.
 
 No. 72 C 1104
 
 18
 In this complaint appellant objects to the diminution of statutory good time. At oral argument defendants suggested that this question is now moot because appellant is presently out of prison on parole. See Ill.Rev.Stat. c. 38, 1003-3-9(a)(3)(i). Since appellant is still technically 'in custody,' and since the record of his past behavior may be relevant for some correctional purposes, this conclusion is doubtful. Cf., Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554. Since appellant's other claims must be remanded, we believe the district court should, in the same proceeding, review his challenge to the disallowance of statutory good time.
 
 
 19
 Finally, the State objects to the fact that the proceeding was brought under 1983, rather than as a petition for a writ of habeas corpus. This objection is met by our discussion of Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, in Miller v. Twomey, supra, 479 F.2d at 703-704.
 
 
 20
 The judgment in 72 C 1104 is vacated and the cause is remanded to the district court for further proceedings.
 
 
 
 [1]
 Appellant was demoted from Grade 'A' to Grade 'C.' A prisoner with Grade 'A' earns 10 days good time per month; a prisoner with Grade 'B' earns five days good time per month; and a prisoner with Grade 'C' earns no good time to reduce his sentence. Brief for appellant at 3
 
 
 [2]
 The regulation apparently permits a prisoner in isolation to consult with his 'attorney.' Whether the warden would allow an indigent to consult with a 'jailhouse lawyer' is not clear. It is possible that the only inmates intended to benefit by this change are those who are represented by retained counsel
 
 
 [3]
 As Chief Judge Swygert has pointed out, a practical solution to this problem, which does not involve the use of fellow inmates as advisers, is available. See Miller v. Twomey, 7 Cir., 479 F.2d 701, 724 n. 3